IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

FILED
OCT 20 2004
LARRY W. PROPES, CLERK
CHARLESTON, SC

Jose Padilla, )
)
    Petitioner )
)
v. ) C/A No. 02:04-2221-26AJ
)
Commander C.T. Hanft, ) Stipulations of Fact
    U.S.N. Commander, )
    Consolidated Naval Brig, )
)
    Respondent )
_____)

In this Court's scheduling order of September 27, 2004, the Court directed the parties "to file stipulations of fact indicating with specificity the details of petitioner's arrest including precise information as to where, when, by whom and at what stage of his repatriation and entry into the United States the arrest occurred." In response to the Court's order, the parties stipulate as follows.

1. On May 8, 2002, petitioner Padilla boarded a flight in Zurich, Switzerland, bound for O'Hare International Airport, Chicago, Illinois. Agents of the Federal Bureau of Investigation (FBI) had become aware of which flight petitioner would be taking from Zurich to Chicago and monitored petitioner during the flight and upon his arrival at O'Hare International Airport.[1]

2. At approximately 12:55 P.M. (C.D.T.),[2] May 8, 2002, the United States District Court for the Southern District of New York issued a material witness warrant for petitioner's arrest in connection with grand jury proceedings.

---

[1] Petitioner does not stipulate to the content of paragraphs 1 and 2. Paragraphs 1 and 2 are factual averments of the respondent.

[2] Petitioner does not stipulate to the times indicated in any paragraph. The references to particular times are factual averments of the respondent.

37

3. Petitioner arrived at O'Hare International Airport on the flight from Zurich at approximately 1:00 P.M. (C.D.T.), May 8, 2002, wearing civilian clothing and carrying no weapons or explosives.

4. Passengers arriving on international flights at O'Hare International Airport must proceed to the Federal Inspection Service (FIS) area within the international arrivals terminal. The FIS area contains both an immigration inspection area and customs inspection area.

5. Passengers must first proceed to the immigration inspection area. Petitioner cleared the immigration inspection area where his United States passport was stamped "admitted" by an Immigration Inspector.

6. Petitioner then proceeded to the customs inspection area. After an initial interview with a Customs Inspector, petitioner was questioned further by Customs Inspectors in an interview room within the customs inspection area.

7. Subsequently, while remaining in the same interview room, petitioner was interviewed by FBI agents. Petitioner's interview with the FBI agents began at approximately 3:15 P.M. (C.D.T.).

8. At approximately 7:05 P.M. (C.D.T.), petitioner declined to continue the interview without the representation of an attorney.

9. At approximately 7:35 P.M. (C.D.T.), while remaining in the same interview room, petitioner was presented with a grand jury subpoena in connection with grand jury proceedings in the Southern District of New York.

10. At approximately 8:10 P.M. (C.D.T.), while remaining in the same interview room, petitioner was arrested by the interviewing agents pursuant to the material witness warrant that had been issued by the United States District Court for the Southern District of New York.

11. After his arrest, petitioner was transferred to the custody of the United States Marshals Service for detention. The United States Marshals Service transported petitioner to New York City and incarcerated him in the Metropolitan Correctional Center, a civilian facility.

12. On June 9, 2002, the district court vacated the material witness warrant and petitioner was transferred to military control.

ON MOTION OF:

_____
Miller W. Shealy, Jr. (ID# 3805)
Assistant U.S. Attorney
Charleston, South Carolina

I CONSENT:

_____
Michael P. O'Connell
Attorney for Petitioner
Charleston, South Carolina